UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **LETTY TEREASA GUIDRY** | **CASE NO. 6:17-CV-01132** |
| **VERSUS** | **MAGISTRATE JUDGE WHITEHURST** |
| **U S COMMISSIONER SOCIAL SECURITY ADMINISTRATION** | **BY CONSENT OF THE PARTIES** |

# ORDER

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Court finds that the Commissioner's decision should be AFFIRMED.

## I. Background

The claimant, Letty Tereasa Guidry, was born on October 5, 1963. *R. 7-1, p. 83*. On December 11, 2013, when she was fifty years old, Ms. Guidry applied for a period of disability and disability insurance benefits, alleging a disability onset date of September 2, 2012, the date of her myocardial infarction. *Tr. 250-253, 324*. She also applied for Supplemental Security Income benefits on February 11, 2014. *Tr. 246-247, 324*. Ms. Guidry has a high school education and worked as a legal secretary. *Tr. 42, 79-80, 270, 286*.

From 2011 through 2015, Ms. Guidry received treatment at University Medical Center ("UMC") for, *inter alia*, coronary artery disease, high blood pressure, COPD, and diabetes. *Tr.724-815, 1198-1289, 1931-2210*. From May 2012 through September 2013, Ms. Guidry was treated at SWLA Primary Care Center for depression and trichotillomania (hair-pulling disorder). *Tr.532-541*. From July 2014 through October 2015, Ms. Guidry received mental health treatment from psychiatrist Edgardo Concepcion, M.D., at the Iberia Comprehensive Community Health Center. *Tr.1498-1578*. He prescribed multiple psychotropic medications to address her symptoms caused by obsessive compulsive disorder, major depression, and anxiety, including hair pulling. *Id*.

The following is a chronology of medical treatment as provided by Ms. Guidry:

On January 4, 2013, Ms. Guidry was treated at UMC for back and hand pain. *Tr.1246-1248*. Examination revealed that the first digit on her left hand had pain on palpation. *Tr.1247*. A repeat EMG was recommended. *Tr.1248*. On March 14, 2013, Ms. Guidry reported to UMC that she "has no feeling in L[eft] hand – painful." *Tr.1267*. The need for an EMG study was recommended again.[1] *Tr.1268*.

On January 29, 2013, the Louisiana Department of Health and Hospitals ("DHH") found that Ms. Guidry was disabled since September 2012. *Tr.500-502*.

---

[1] Despite two recommendations there is no indication in the record that Ms. Guidry had a repeat EMG study.

An April 8, 2013 MRI of the lumbar spine revealed mild lower lumbar spine degenerative disc disease with moderate right foraminal stenosis at L4-L5. *Tr.961*. An October 20, 2015 x-ray of the lumbar spine indicated lumbar facet hypertrophy and spondylosis. *Tr.2006*. Norco was prescribed. *Tr.2007*.

On May 16, 2014, Ms. Guidry attended a consultative examination with Julana Monti, M.D. *Tr.817-820*. Dr. Monti's examination revealed decreased grip strength on the left (3/5). *Tr.818*. Her diagnoses included Carpal Tunnel syndrome, s/p surgical release. *Tr.819*. Dr. Monti opined that Ms. Guidry could lift or carry objects weighing up to 15 pounds. *Tr.819*.

On June 25, 2015, Ms. Guidry was admitted to Our Lady of Lourdes Hospital ("OLOL") due to generalized weakness and frequent falls. *Tr.1362-1369*. Her symptoms were attributed to dehydration, hyperglycemia, and weakness. *Tr.1369*.

From October 9, 2015 through 10/12/2015, Ms. Guidry was admitted to OLOL for low blood pressure, headache, and lethargy. T.1588-1920.

On November 8, 2015, Ms. Guidry was admitted to Seaside Health System Inpatient Psychiatric Unit following an overdose of medication. *Tr.2216-2236*.

On March 16, 2016, Ms. Guidry was treated at OLOL after a fall. *Tr.2278-2283*.

On June 10, 2014, it was determined that Ms. Guidry is not disabled. *R. 7-1, p. 33*. Ms. Guidry requested a hearing, which was held on March 14, 2016 before Administrative Law Judge ("ALJ") Lawrence T. Ragona. *Id. at p. 79*. The following is Ms. Guidry's summary of her testimony at the hearing:

Ms. Guidry testified that she has experienced frequent angina (chest pain) since her 2012 heart attack as well as shortness of breath, weakness, and fatigue. *Tr.80, 94*. She also reported significant problems with anxiety (including hair pulling or Trichotillomania) and insomnia. *Tr.81, 89*. She reported that angina disturbs her sleep and she takes nitroglycerin at night as needed due to angina. *Tr. 92-93*. She frequently (multiple times per week) has difficulty sleeping. *Tr.92-93*. Due to fatigue and weakness, Ms. Guidry reported there are several days per week that she gets out of bed only to eat and use the bathroom. *Tr.94*.

Ms. Guidry testified that she is able to type 20-30 minutes before hand pain makes her stop. *Tr.84*. She reported having been on pain medication for 4-5 years due to hand pain. *Tr.81-82*. She stated that she needs further surgery on both hands. *Tr.84*. Ms. Guidry testified that she would be unable to sit all day performing office work due to low back pain caused by spinal stenosis and a herniated disc. *Tr.84*.

Ms. Guidry's father, Bobby J. Guidry, also testified at the hearing. Mr. Guidry stated that Ms. Guidry's ability to accomplish routine tasks has "greatly deteriorated" due to memory problems and fatigue. *Tr.100*. Mr. Guidry, who is

retired, stated that he has observed that Ms. Guidry spends some days in bed due to fatigue. *Tr.101-102*. Mr. Guidry testified that his daughter's condition has been declining since her September 2012 heart attack. *Tr.102*.

Vocational Expert (VE) Harris Rowzie testified that if Ms. Guidry was absent from work 4-5 days per month due to her medical impairments, she would be unable to perform any work in the economy. *Tr.105*.

The ALJ rendered an unfavorable decision on April 20, 2016. *R. 7-1, p. 36*. The claimant requested review of the ALJ's ruling, but the Appeals Council denied review. Accordingly, the ALJ's decision is the Commissioner's final decision for purposes of judicial review.

The claimant now argues that her heart condition and her carpal tunnel syndrome are disabling.

## II.   Assignment of Errors

The claimant argues that the Commissioner's ruling is erroneous for two reasons: (1) the ALJ failed to follow the "slight abnormality" standard in finding that the claimant's carpal tunnel syndrome is a non-severe impairment and (2) the ALJ failed to make affirmative findings regarding claimant's subjective complaints.

## III. Standard of Review

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision. 42 U.S.C. § 405(g); *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir.2006). If the Commissioner's findings are supported by substantial evidence and the decision comports with relevant law, the decision must be affirmed. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir.2000). Substantial evidence is more than a mere scintilla and less than a preponderance. *Id*. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir.1986). The court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Boyd*, 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

A claimant seeking Social Security benefits bears the burden of proving that she is disabled. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir.2005. Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

6

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C, § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 404.1572.The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled. At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will be found not disabled. At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors. At step four, an individual found capable of performing the work he has done in the past will be found not disabled. At step five, factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any work other than the work he has done in the past. *See, e.g., Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir.1991), summarizing 20 C.F.R. § 404.1520(b)-(f). *See, also, Masterson v. Barnhart*, 309 F.3d 267, 271–72 (5th Cir.2002).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity, 20 C.F.R. § 404.1520(a)(4), by determining

the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record. 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and it is used at the fifth step to determine whether the claimant can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272. At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Id.* This burden may be satisfied by reference to the Medical–Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Id.* If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Id.* If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Anthony v. Sullivan*, 954 F.2d at 293, *citing Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir.1988). *See, also*, 20 C.F.R. § 404.1520(a)(4).

In this case, the Commissioner found, at step one, that Ms. Guidry has not engaged in substantial gainful activity since September 2, 2012, the date on which

her disability allegedly began. *R. 7-1, p. 41*. This finding is supported by evidence in the record.

At step two, the ALJ found that Ms. Guidry has the following severe impairments: status post myocardial infarction with defibrillator placement; major depression; generalized anxiety disorder; obsessive compulsive disorder; diabetes; degenerative disc disease of the lumbar spine; and sleep apnea (20 CFR 404.1520(c) and 416.920(c)). Ms. Guidry disputes this finding as to her carpal tunnel syndrome.

At step three, the ALJ found that Ms. Guidry does not have an impairment or a combination of impairments that meets or medically equals a listed impairment. At the next step of the process, the ALJ found that Ms. Guidry retains "the residual functional capacity to perform light work . . . specifically, she has the following limitations: she can lift and carry up to 20 pounds occasionally and 10 pounds frequently; she can stand or walk up to six hours total out of an eight-hour work day; can sit up to six hours total out of an eight-hour work day; should have not exposure to pulmonary irritants; can do no complex work; and can perform only frequent handling and fingering." *R. 7-1, pp. 38-42*. Ms. Guidry objects to this finding.

At step four, the ALJ found that Ms. Guidry is unable to perform her past relevant work. *R. 7-1, p. 42.* At step five, the ALJ found that Ms. Guidry is capable

of performing light work as a housekeeping/cleaner and bench assembler, as those jobs are performed in the national economy. *Id. at p. 43.* Ms. Guidry disputes this finding.

## IV. Discussion

A. Did the ALJ Properly Evaluate the Severity of the Claimant's Carpal Tunnel Syndrome?

The claimant contends that the ALJ erred in failing to find her carpal tunnel syndrome severe. An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Following a careful reading of the ALJ's decision, this Court finds that the ALJ applied the proper legal standard in reaching his conclusion regarding the severity of the claimant's carpal tunnel syndrome. The claimant has a history of carpal tunnel syndrome, and had release surgery on both hands in 2005. *Tr. 714*. Thereafter, she allegedly continued to have pain and/or numbness in her hands. *Tr. 701*.

The record indicates that she complained of hand pain and/or numbness during examinations at UMC in January, March, and July of 2013 *Tr. 738, 744, 783*. In particular, she complained of pain in her left hand and "trigger finger" when seen by Dr. Hebert at UMC in July 2013. Examination revealed pain upon

palpation, and he recommended that she have a repeat EMG done, but she refused. *Tr. 1248, 1268*. Also, in May 2014, consultative physician, Julana Monti, M.D., found reduced grip strength of 3/5 of her left hand. *R. 819*. Other than a March 11, 2014 examination in which she complained of hand pain, *Tr. 774,* 1206, the record demonstrates that the claimant routinely denied having any muscle pain, spasms, numbness, tingling, weakness or motor problems in general. In each examination, including the March 11, 2014 visit, she demonstrated adequate grip strength and muscle tone, no deformities and no problems with her extremities. As noted by the ALJ, the claimant rarely mentioned carpal tunnel syndrome to her treating providers. *Tr. 36.* Finally, there is no indication in the record that she ever had any further treatment of her carpal tunnel syndrome.

The claimant contends the ALJ erred in failing to find that her complaints related to her left hand pain in early 2013 along with Dr. Monti's finding of decreased grip strength in her left hand, reduced her lifting and carrying abilities and constituted a "severe impairment." She argues that the ALJ rejected Dr. Monti's opinion that she was limited to lifting and carrying 15 pounds, instead finding, without providing any rationale, that she could lift and carry 20 pounds occasionally. *Tr. 38*. The claimant was seen on one occasion by consultative physician, Dr. Monti. Based on that examination, Dr. Monti opined that claimant could lift up to 15 pounds and stated no other limitations on her ability to "read,

11

drive or perform fine motor skills." Dr. Monti also found, however, that claimant had no edema in her extremities, no abnormality with any joint, no tenderness, intact sensation, normal reflexes and full (5/5) motor strength. *Tr. 818*. In his opinion, the ALJ gave Dr. Monti's opinion some weight but also found that claimant's report of being independent in performing light daily activities like housework, dog walking, and cleaning her sister's office provided substantial support for his own decision. "[C]onflicts in the evidence are for the [Commissioner] to resolve." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). The determination of whether or not a claimant satisfies the conditions of a listing is "one reserved to the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c), 416.927(e)(2), 416.946(c). This Court finds that there is substantial evidence in the record supporting the ALJ's finding that the claimant's carpal tunnel syndrome is not severe. Therefore, this assignment of error lacks merit.

B. Did the ALJ Fail to Consider Claimant's Subjective Complaints of Functional Limitations

The claimant next argues that the ALJ failed to explain his reasons for rejecting her subjective complaints. *Tr. 39-42*. This argument also lacks merit. The law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994); *see also, Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995) (once a medical impairment is established, the ALJ must consider the claimant's subjective complaints of pain

along with the medical evidence in determining the individual's work capacity); *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir.1988) ("[t]he Act, regulations and case law mandate that the Secretary require that subjective complaints be corroborated, at least in part, by objective medical findings"). A review of the administrative decision in this case reflects that the ALJ did so.

In evaluating claimant's subjective complaints and in arriving at an RFC finding, the ALJ discussed the following:

(1) The claimant's testimony and subjective reports of her impairments and functional limitations: that she is prevented from working due to residual symptoms after a heart attack in September 2012, including shortness of breath, weakness, dizziness, chest pains, and fatigue; that she can only walk for about 150 feet; that she becomes dizzy and passes out if she stands too fast; that she has a defibrillator that activates often; that her back pain limits her ability to sit for extended periods of time and causes weakness and numbness radiating into her legs; and, that she has mental symptoms arising from depression and anxiety, including pulling her hair and forgetting appointments and medications.

(2) The claimant's reports of her activities of independent daily living: that include light activities such as housework, walking her dogs, grocery shopping and cleaning her sister's office. As well as her limited social functioning including visits with family, a planned family trip and volunteer work;

(3) The diagnoses of various medical conditions for which claimant received treatment and her need for mainly conservative treatment in the form of medications during the adjudicated period: since her September 2012 heart attack, the claimant has had no further significant episodes since that time; A defibrillator was surgically placed in the claimant and she was informed that continuing to smoke cigarettes would trigger the defibrillator to fire, *Tr. 591* (She continued to smoke. *Tr. 516, 701*); The claimant has had no further significant episodes of ischemia or heart failure and that she generally follows up with a cardiologist once a year with largely unremarkable findings; continuing chest pains were admittedly relieved with nitroglycerin, *Tr. 1923*. The claimant's objective findings related to her back pain have been relatively mild, and the claimant has sought minimal treatment for this condition. A CT scan of the lumbar spine found "mild" lower lumbar degenerative disc disease, L4-5 moderate right foraminal stenosis, and no spinal canal stenosis. *Tr. 961*. The claimant has been treated throughout the adjudicatory period for depression and anxiety disorders—she complained of depression but usually sought relief for persistent anxiety with recurrent panic attacks, which manifested in hair-pulling, she was diagnosed with major depression, moderate, generalized anxiety disorder, and obsessive compulsive disorder, her medications were often adjusted, and although she continued to

complain of occasional anxiety and hair-pulling, more recent mental status examinations were normal. *Tr. 1568-78*.

(4) The effectiveness of such medications, as evidenced by increased symptoms when the claimant did not follow her doctor's prescribed medication regimen: subsequent to implanting the defibrillator, the claimant has continued to experience chest pains, weakness, shortness of breath, and fatigue on occasion. These symptoms were found to be attributable at least to some degree to inconsistent or lack of compliance with treatment. *Tr. 1134-37*. In June of 2015, the claimant presented twice to the emergency room complaining of dizziness, but these episodes were attributed to low blood pressure, dehydration, and/or hyperglycemia arising from suboptimally controlled diabetes. *Tr. 1362-89*. A nuclear stress test in July of 2015 was normal and "suggestive of low risk for future cardiovascular events." *Tr. 1528*. In October of 2015, the claimant presented to the emergency room with high blood pressure. Based upon reports from her sister and mother, as well as the minimal dosage of medication ultimately required to bring the claimant's blood pressure under control, the treating physician concluded that the claimant had not been taking any of her medications for some time. *Tr. 1585-86*.

(5) The claimant's reports and her physicians' documentation of her questionable compliance with her medicine regimen or follow-up schedule and her

15

drug-seeking behavior when she was hospitalized for overdosing on a medication in November 2015: on at least two (2) occasions in 2013 and 2014 the UMC medical examiners noted that the claimant requested an early refill of Klonopin because her brother was taking her medication before he died, *Tr. 1134, 1140*; the claimant was admitted to OLOL through the emergency room on October 9, 2015 for confusion and anxiety and was discharged on October 12, 2015 with a diagnosis of Klonopin abuse, *Tr. 1890, 1898*; she was later admitted at Seaside Health Systems in November of 2015 after taking too many Klonopin, *Tr. 2229*; upon admission she was anxious, irritable, and disheveled, with impaired judgment, attention, and concentration. A major concern seemed to be apparent drug-seeking behavior; she was discharged to her aunt's care after eight days of medication and therapy until space was available at an addiction recovery center; her prognosis was noted to be "fair" assuming compliance with treatment. *Tr. 2214-35*.

(6) The objective medical findings, including examination and diagnostic testing, that show normal or, at worst, minimal abnormalities to support the degree of limitations that claimant alleged: the ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he opined, however, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.

16

(7) The May 16, 2014 medical opinion from Dr. Monti, the consultative examiner, which the ALJ afforded some weight: Dr. Monti opined that the claimant could sit for up to eight hours, stand or walk for one hour at a time for up to four hours total, lift and carry up to 15 pounds, interact effectively and peaceably with others, understand and follow instructions, and communicate without difficulty. *Tr. 817-820*. The ALJ explained that he assigned little weight to Dr. Monti's opinion on the claimant's mental functioning because it was not within her specialty and was inconsistent with treatment notes from the claimant's mental health providers. As to her opinion related to the claimant's back problems, based on evidence of the claimant's activities of daily living, including light housework, caring for and walking dogs, and cleaning her sister's office, the ALJ found that the claimant is slightly more limited in sitting than Dr. Monti opined, but the limitation to standing or walking one hour at a time for up to four hours is slightly more restrictive than necessary. *Tr. 39-42*.

## V. Conclusion and Recommendation

The undersigned finds that the ALJ applied appropriate legal standards in ruling on this case, and the ALJ's findings are based on substantial evidence in the record. Accordingly,

**IT IS ORDERED** that the decision of the Commissioner be **AFFIRMED** and this matter dismissed with prejudice.

**THUS DONE AND SIGNED** this 25th day of October, 2018.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE